CLARENCE SEELEY, Respondent, v. NEW YORK TELEPHONE COMPANY, Appellant, et al., Defendants.

Third Department, March 11, 1953.

*Kenneth Holcombe, Frank A. Fritz, Cyril Crimmins* and *Edward F. Snydstrup* for appellant.

*F. Walter Bliss* and *Harold R. Soden* for respondent.

FOSTER, P. J. Defendant appeals from a judgment of $50,324.21, entered upon the verdict of a jury in a negligence action, and from the order denying its motion for a new trial. The amount awarded was for personal injuries claimed by plaintiff to have been the result of an electric shock he received while using one of defendant's telephone instruments.

The alleged incident occurred on the night of February 16, 1949, in a Chinese-American restaurant in the city of Glens Falls, New York. Plaintiff went there for dinner and some time between 8:00 and 9:00 P.M. he attempted to call his home at Schroon Lake, some forty miles away. For that purpose he used a public telephone booth in the restaurant. He testified that when a connection was finally made he felt a sensation of electricity going through him, that his body became stiff and he could not move. He was removed from the restaurant and taken to a hospital. Thereafter paralysis developed in his right leg and arm, and ulcers on his right leg. Two physicians testified, in effect, that his injuries came from an electric shock which impaired his nervous system. Only a few hours before the alleged incident occurred one of those physicians examined plaintiff for a minor complaint and found him to be in excellent physical condition for a man of his years. He was eighty-one years of age at the time.

Plaintiff also produced as a witness a man who answered his call at the Schroon Lake end of the line — one Freeman Manley. This witness said he recognized plaintiff's voice. At the same time he heard a crackling noise and received an electric

shock himself. Manley sued the defendant in another action and his case was finally dismissed by a divided court in the Court of Appeals (303 N. Y. 18).

After its motion to dismiss was denied the defendant produced testimony, mostly but not entirely from the lips of employees, to the effect that the telephone in question was in good working order shortly before and after the alleged accident. However the operator who took the call for Schroon Lake said the man who made the call complained of receiving a shock but stated he was not hurt.

Witnesses for the defendant testified that protective devices had been installed on the line from the central switchboard in Glens Falls to the restaurant which would have effectively prevented any excess current from reaching the telephone receiver in the booth. Those were heat coils, carbon blocks, and a fuse in the cellar of the restaurant. They were examined the morning after the accident and found to be in working order, without any of the characteristic signs of excess current. In addition the booth was examined, the telephone instrument disassembled and checked, and no evidence of an electrical discharge found. Two experts, not regular employees of the defendant, examined the equipment about a year after the accident. Assuming the existence of the same protective devices they found at that time, and the absence of any physical evidence of an excessive electrical discharge thereon, they gave identical opinions to the effect that an electric shock from the telephone receiver in question, such as the plaintiff described, was a scientific impossibility. An insulated power wire in the cellar, attached to a socket and running to an electrically operated musical device, was found draped over the telephone wire but no evidence was offered to show that this could or did cause any excessive current in the telephone.

One physician called by defendant said that plaintiff suffered from a lesion on the left side of the brain, which affected his central nervous system and which could have been caused by many conditions. He made no diagnosis as to the exact cause. Another physician gave it as his opinion that plaintiff was not suffering from an electric shock, but rather from a diseased condition, probably a brain tumor.

The case was submitted to the jury under the doctrine of *res ipsa loquitur*. Defendant urges here that the submission of the case on this theory was erroneous. A fair consideration of this point requires a preliminary examination of some evidence said to have been erroneously received.

Defendant contends that it was reversible error to permit plaintiff to testify that he felt the sensation of electricity going through him from the receiver of the telephone. With this contention we disagree. Doubtless plaintiff was incompetent to testify that his injuries were the result of an electric shock, but he was not incompetent per se to say that he felt an electric shock as he held the telephone receiver. In this day and age some knowledge of electrical phenomena is common, and almost everyone has experienced an electric shock of some degree at one time or another. Moreover plaintiff testified he had experienced electric shocks before. His credibility was for the jury.

Defendant also argues that Manley was foreclosed from testifying that he received a shock at the other end of the line because of the opinion of the Court of Appeals where his case was dismissed (*Manley* v. *New York Tel. Co., supra,* p. 24). Such a conclusion is not justified. The majority opinion in that case specifically pointed out that Manley '' never once said he felt an *electric shock*.'' He merely testified there that he was '' knocked out ''. There is nothing in the majority or dissenting opinion in that case to rule Manley's testimony out of this case as a matter of law. Its weight of course was for the jury. On this appeal plaintiff is entitled to the most favorable view of the evidence that the jury could find, and therefore we must assume the jury accepted the testimony of plaintiff and Manley that each received an electric shock.

With those basic facts established the problem of whether plaintiff presented a *res ipsa* case becomes simplified. Such incidents do not ordinarily happen if reasonable care is used in the installation, maintenance and control of telephone lines. In the *Manley* case the application of the doctrine was rejected by a closely divided court because there was no proof of an electric shock. In another telephone case however the doctrine was applied because the instrument itself bore physical signs of an excessive current (*Hanaman* v. *New York Tel. Co.,* 278 App. Div. 875, motion for leave to appeal denied, 303 N. Y. 1013). Hence we think plaintiff here established a prima facie case under the evidentiary rule of *res ipsa loquitur.*

There remains of course the query of whether defendant's evidence was sufficient to overcome plaintiff's prima facie case. We can hardly answer that in the affirmative either as a matter of law or fact. Substantially all of defendant's evidence came from the lips of its own regular employees and other interested witnesses. Certainly their credibility was for the jury. It produced none of the actual equipment involved but instead

offered facsimiles. It offered no evidence to show any inspection of the major part of the line involved in the long distance telephone call. On the whole record therefore we think the case was for the jury, and, except as to the amount of the recovery, we do not think the verdict was against the weight of evidence.

We do think however that in view of plaintiff's age, and of all the testimony concerning his injuries as well as his activities, that the verdict was excessive. The judgment should be reversed, without costs and a new trial directed unless plaintiff stipulates within ten days after a decision is handed down herein to accept the sum of $25,000 as the amount of the verdict, in which case the judgment as so modified will be affirmed, and the order denying the motion for a new trial, with costs.

BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Judgment reversed, without costs, and a new trial directed unless plaintiff stipulates within ten days after the entry and service of the order to be entered hereon, to accept the sum of $25,000 as the amount of the verdict, in which case the judgment as so modified, on the law and facts, and the order denying the motion for a new trial are affirmed, with costs.